IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 16, 2018

**RAYMOND THOMAS SWEATT v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2015-B-1506     Steve R. Dozier, Judge**

_____

**No. M2017-01803-CCA-R3-PC**

_____

The Petitioner, Raymond Thomas Sweatt, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his convictions of robbery and carjacking and resulting effective twenty-year sentence. On appeal, the Petitioner contends that he received the ineffective assistance of trial counsel, which resulted in his guilty pleas being unknowing and involuntary. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Manuel B. Russ, Nashville, Tennessee, for the appellant, Raymond Thomas Sweatt.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In June 2015, the Davidson County Grand Jury indicted the Petitioner and his codefendant, Summer Sawyers, for aggravated robbery, a Class B felony; carjacking, a Class B felony; and possessing a weapon during the commission of a dangerous felony, a Class C felony. On September 2, 2016, the Petitioner pled guilty to robbery and attempted carjacking, Class C felonies, and the State dismissed the weapon charge. Pursuant to the plea agreement, the Petitioner was to receive consecutive, ten-year sentences as a Range II, multiple offender.

At the guilty plea hearing, the State advised the trial court that on May 3, 2015, the male victim went to watch a fight at the San Jose Fiesta Restaurant on Wallace Road. Sawyers approached him and asked for a ride to an apartment complex on Maudina Road. The victim agreed and drove Sawyers to the apartment complex. There, the Petitioner and an unidentified male stopped the victim's Honda. Sawyers got out of the Honda, and the Petitioner, who was armed with a handgun, pulled the victim out of the car. Sawyers got back into the Honda and fled with the vehicle. The victim gave the Petitioner and the unidentified male his wallet containing $200, and the two men punched the victim and knocked him to the ground. When the victim tried to get up, the two men knocked him unconscious and fled the scene. Two days later, a police officer stopped the Honda for a traffic violation. The Petitioner was driving the car.

On February 17, 2017, five months after the Petitioner pled guilty, he filed a petition for post-conviction relief, claiming that he received the ineffective assistance of counsel in that trial counsel failed to inform him about the "ramifications of [his] plea deal." The post-conviction court appointed counsel, and counsel filed an amended petition. In the amended petition, the Petitioner claimed that he received the ineffective assistance of counsel because trial counsel knew he wanted to go to trial, did not properly prepare his case for trial, and insisted that he plead guilty. The Petitioner also claimed that his guilty pleas were unknowing and involuntary because trial counsel failed to "make it clear" to him that he would serve the two, ten-year sentences consecutively for a total effective sentence of twenty years.

At the evidentiary hearing, the Petitioner testified that trial counsel represented him for almost one year before he pled guilty. The Petitioner "mostly" saw trial counsel at court dates, but counsel met with him in jail "every once in a while." The Petitioner received discovery from the State, and trial counsel and the Petitioner discussed some of the State's evidence. The State made five or six plea offers to the Petitioner, but the Petitioner rejected them because he wanted to go to trial. Trial counsel and the Petitioner discussed possible sentences if the jury convicted him of aggravated robbery and carjacking, and trial counsel told the Petitioner that he was facing a "substantial" amount of time in confinement. Nevertheless, the Petitioner wanted to go to trial.

The Petitioner testified that his codefendant, Sawyers, was his girlfriend at the time of the crimes but was going to testify against him at trial. The Petitioner's planned trial strategy was that the victim could not identify him in a photograph array and that Sawyers' testimony was "lies." The Petitioner was on parole when he was charged in this case, and his parole was revoked. He met with the parole board, and the board asked him about the new charges. The Petitioner told the parole board that "I assaulted someone, but I didn't steal no car. I didn't rob no one." Trial counsel later told the

Petitioner that his statement to the parole board was harmful to his case. The Petitioner disagreed with counsel and told counsel that he "didn't admit to nothing having to do with the crime."

The Petitioner testified that about three weeks before his scheduled trial date, trial counsel told him that the State had made a "better" offer for "10-years at 35 . . . for simple robbery and attempted car jacking." The Petitioner did not want to take the offer, but counsel did not want the Petitioner to go to trial. The Petitioner said that trial counsel "wasn't ready to go to trial to fight" on his behalf and that trial counsel said his case "look[ed] bad." The Petitioner stated that counsel "was basically all doubts and negative speaking" and that he wanted to go to trial but not with trial counsel. Therefore, he did not think he had any choice but to accept the State's offer.

The Petitioner testified that when he pled guilty, he thought his effective sentence was going to be "collectively 10." He explained, "Because in 2009 when I signed for my time, I had two 8's and a 6 and they was collectively eighteen. So I was expecting the same thing [in this case]." He acknowledged that trial counsel went over the plea agreement form with him, that the form stated he was going to serve the sentences consecutively, and that he signed the form. He also acknowledged that the judgments of conviction reflected consecutive sentences and that the trial court told him at the guilty plea hearing that he was receiving an effective twenty-year sentence. He acknowledged that he did not pay much attention to what the trial court said at the hearing and said that he did not realize he had received a twenty-year sentence until he got to prison. Post-conviction counsel asked how the Petitioner could have misunderstood the length of his effective sentence, and the Petitioner stated,

> When I was signing the plea -- I wanted to go to trial, but when I signed the plea, I was thinking that the 10s was together. At first I thought it was the ten for the robbery or the ten for attempted car jacking, but then I guess I realized it -- I thought they was going to be just one -- one 10.

On cross-examination, the Petitioner acknowledged that trial counsel told him that he was facing twelve to twenty years to be served at 85% release eligibility for aggravated robbery, twelve to twenty years for carjacking, and a mandatory consecutive sentence to be served at 100% for possessing a weapon during the commission of a dangerous felony. However, the Petitioner wanted to go to trial. At first, the Petitioner and trial counsel thought the Petitioner had a strong case. In February 2016, though, Sawyers pled guilty and agreed to testify against the Petitioner. The Petitioner acknowledged that she was going to say he committed the crimes. He said he still wanted to go to trial because Sawyers was lying "about a lot of things."

- 3 -

The Petitioner testified that in 2009, he pled guilty to aggravated robbery, attempted aggravated robbery, and carjacking. He acknowledged that he pled guilty to those offenses because he was afraid of the potential punishments. He was on parole for those convictions when he committed the offenses in this case. When the Petitioner met with the parole board, he told the board that he did not rob anyone or take anyone's car but that he was "assaulting the guy [for] the way he was touching my old lady."

The Petitioner testified that he used to take mental health medications but that he had not taken them "in a long time." He said that he dropped out of school in the eighth grade but obtained his GED, that he could read and write, and that he understood the allegations in this case but did not understand "legal terms." The Petitioner did not have any mental or psychological issues on the day of his guilty plea hearing. He acknowledged that trial counsel went over the plea agreement form with him but said that he did not remember counsel's telling him that he would serve the two, ten-year sentences consecutively. He then said that trial counsel told him that he was going to serve the two sentences consecutively but that counsel did not tell him that he was going to receive a twenty-year sentence. The Petitioner stated, "I just thought I was getting the total of a 10-year sentence is what it was." The Petitioner said he should have voiced his concerns about trial counsel during the guilty plea hearing. At the end of October 2016, the Petitioner learned that he had an effective twenty-year sentence. By that time, it was too late to file a motion to withdraw his guilty pleas.

On redirect examination, the Petitioner acknowledged that although he admitted to the parole board that he committed an assault, he did not admit to robbery or possessing a weapon. He also acknowledged that he and trial counsel discussed the impact of his statement to the parole board on his upcoming trial. On recross-examination, the Petitioner testified that he did not know the victim prior to the assault. He said he was found in the victim's car a couple of days after the assault because Sawyers "showed up in the car."

Trial counsel testified for the State that he had been licensed to practice law just over three years and that he primarily practiced criminal defense. The trial court appointed him to represent the Petitioner in October 2015, and their first meeting occurred via video conference while the Petitioner was in the custody of the sheriff's department. Trial counsel and the Petitioner then met four to five times at the "CJC," and they discussed the charges against the Petitioner and his possible punishments.

Trial counsel testified that when he first started representing the Petitioner, he thought the Petitioner "had a good case." The victim had misidentified the Petitioner twice in a six-photograph array. Moreover, the defense "could very possibly have

- 4 -

explained away the circumstantial evidence around him being found in the car and there [was] seemingly no lack of a connection to the actual robbery." However, Sawyers later entered into a plea agreement with the State and agreed to testify against the Petitioner. A detective then contacted trial counsel about an audio-recording of a parole hearing in which the Petitioner "did admit his involvement." At that point, trial counsel told the Petitioner that "our biggest defense was identification." Counsel explained to the Petitioner that he thought he could impeach Sawyers' testimony with the State's plea deal and that he could argue the Petitioner's being found in the victim's car was circumstantial. It was going to be "very, very difficult," though, to explain the Petitioner's admission during the parole hearing to a jury. Counsel told the Petitioner that the admission, combined with the State's other evidence, "would most likely lead to a conviction." The Petitioner understood what counsel said.

Trial counsel testified that as the trial date approached, the State made a plea offer. Counsel "laid out all of the cards on the table" for the Petitioner, told him the risks of going to trial, and told him "what he was facing." Counsel also played the recording of the parole hearing for him. Counsel told the Petitioner that the offer was for "two 10-year sentences consecutively at 35 percent" and that "his parole eligibility would be roughly seven years." The Petitioner agreed to plead guilty, so trial counsel filled out a plea agreement form. Counsel said that his "habit" was to read plea forms to defendants and "physically show them the portions, make sure they are seeing the portions that contain the possible sentence. And the agreed upon sentence." The Petitioner signed the form. Counsel stated, "I don't think he had any questions [about the form]. My belief was that he understood." During the plea hearing colloquy, the Petitioner never indicated he did not understand the trial court's questions. The State asked, "At any point did he question you or [the trial court] about the 20-year sentence that he was pleading guilty to?" Counsel answered, "Not to my recollection." Counsel said he thought the Petitioner "fully understood" the plea agreement and the length of his effective sentence.

On cross-examination, trial counsel acknowledged that the Petitioner admitted at the parole hearing to an assault but did not admit to a robbery or carjacking. Counsel explained the theory of criminal responsibility to the Petitioner and how his being found in the victim's car hurt his case. Counsel said that at first, the Petitioner "absolutely" wanted to go to trial. However, after the Petitioner heard the parole hearing recording, counsel thought the Petitioner "felt defeated." Moreover, Sawyers was going to testify against the Petitioner. Counsel said he did not remember the Petitioner's ever saying he wanted a new attorney.

In a written order, the post-conviction court denied the petition for post-conviction relief. The post-conviction court specifically accredited trial counsel's testimony that counsel explained the length of the Petitioner's effective sentence to him and that counsel

told the Petitioner that the Petitioner would be eligible for parole after serving about seven years in confinement. The court found that trial counsel was not ineffective. The post-conviction court also accredited trial counsel's testimony that he read the plea agreement form to the Petitioner and "showed him the sentence portion." The post-conviction court noted that the Petitioner signed the form. The court found that the transcript of the guilty plea hearing corroborated trial counsel's testimony that he explained the plea agreement to the Petitioner and found that the transcript confirmed the Petitioner entered his pleas knowingly and voluntarily.

## II. Analysis

On appeal, the Petitioner contends that he received the ineffective assistance of counsel, which resulted in his guilty pleas being unknowing and involuntary. Specifically, the Petitioner claims that although he wanted to go to trial, trial counsel lacked confidence in his case and was "overly negative" about the potential outcome. As a result, the Petitioner did not want to go to trial with trial counsel and thought he had no choice but to plead guilty. The Petitioner also claims that trial counsel failed to advise him that he would have to serve his two, ten-year sentences consecutively for a total effective sentence of twenty years. The State argues that the post-conviction court properly denied the petition. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to

- 7 -

confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

As to the Petitioner's claim that he received the ineffective assistance of counsel, trial counsel explained at the evidentiary hearing that he thought a jury would convict the Petitioner because Sawyers was going to testify against the Petitioner at trial and because the Petitioner made a statement to the parole board admitting his involvement in the crimes. If convicted, the Petitioner was facing a "substantial" amount of time in prison. Due to the problems with the Petitioner's case, trial counsel advised the Petitioner to plead guilty, and the Petitioner took his advice. Trial counsel testified that he explained the plea agreement, including the effective twenty-year sentence, to the Petitioner, and the post-conviction court accredited counsel's testimony. Therefore, the Petitioner has failed to demonstrate that counsel rendered deficient performance or that he was prejudiced by any deficiency.

As to the Petitioner's claim that his guilty pleas were unknowing and involuntary, trial counsel testified that he explained the risks of going to trial to the Petitioner and that the Petitioner decided to accept the State's offer to plead guilty in exchange for two consecutive ten-year sentences to be served at 35%. Trial counsel stated that he went over the guilty plea form with the Petitioner and that the Petitioner never questioned his effective sentence. We note that the form is in the appellate record and provided that the sentences were to "run consecutively." The form also stated that "consecutive" meant "one after the other." At the guilty plea hearing, the trial court repeatedly informed the Petitioner that the ten-year sentences were to be served consecutively. Our review of the plea hearing transcript reveals that the trial court never specifically advised the Petitioner that his effective sentence would be twenty years. However, trial counsel testified that he thought the Petitioner understood the length of his effective sentence. Moreover, the Petitioner answered yes and no at the appropriate times during the guilty plea hearing, never questioned the length of his effective sentence, and never expressed any concern about trial counsel's representation. The Petitioner could read and write, was familiar with criminal proceedings because he had pled guilty to almost the exact same offenses previously, and was facing a substantially greater punishment if convicted at trial. Thus, we conclude that the post-conviction court did not err in ruling that the Petitioner entered his guilty pleas knowingly and voluntarily.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____
NORMA MCGEE OGLE, JUDGE